IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**CHRISTOPHER B. TAYLOR,**

**Defendant.**                                             **No. 04-CR-30095-DRH**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction and Background

Before the Court is Defendant's motion for a judgment of acquittal. (Doc. 163.) On September 16, 2005, after a five-day trial, a jury found Defendant Christopher B. Taylor ("Defendant") guilty of one Count of possession with the intent to distribute "5.9 grams of a mixture or substance containing cocaine in the form of cocaine base (commonly known as "crack")" ("Count I") and one Count of distribution of 12.8 grams of crack ("Count II"). Defendant then filed a motion for a judgment of acquittal pursuant to **Federal Rule of Criminal Procedure 29(c)(1)**.[1] The government responds in opposition. (Doc. 176.)

---

[1] "A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7-day period." **FED. R. CRIM. P. 29(c)(1)**.

Defendant premises his argument for acquittal on the failure of government expert and forensic scientist Kerry Hymes ("Hymes") to positively identify the 5.9-gram substance referred to in Count I (the "5.9-gram substance") as crack, as opposed to cocaine base more generally. Because of this failure, Defendant argues, there was insufficient evidence at trial for the jury to convict him on Count I, and thus the conviction violates his Fifth Amendment right to "indictment or presentment." (Doc. 163, p. 2.) The government disagrees. For the reasons below, the Court denies Defendant's motion.

## II. Analysis

### A. Sufficiency-of-the-Evidence Standard

Defendants who contest the sufficiency of evidence at trial face a "daunting," **United States v. Curtis, 324 F.3d 501, 505 (7th Cir. 2003)**, "'nearly insurmountable hurdle.'" **United States v. Johnson, 127 F.3d 625, 628 (7th Cir. 1997)** (citation omitted). The threshold question is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" **Curtis, 324 F.3d at 505** (citing **Jackson v. Virginia, 443 U.S. 307, 319 (1979)** (emphasis in original). Stated differently, a jury's verdict will be overturned only when the trial record contains no evidence from which the jury could find guilt beyond a reasonable doubt. **Curtis, 324 F.3d at 505** (citing **United States v. Menting, 166 F.3d 923, 928 (7th Cir. 1999)**). A court must, furthermore, consider evidence in the light

most favorable to the Government. *Johnson*, **127 F.3d at 628** (citing *United States v. Moore*, **115 F.3d 1348, 1363 (7th Cir. 1997)**.

### B.     Crack Versus Cocaine Base

Defendant's motion focuses on the distinction between two closely related terms: "cocaine base" and "crack." The Seventh Circuit has held that the term "cocaine base" is broader than the term "crack." *See United States v. Edwards*, **397 F.3d 570, 571-72 (7th Cir. 2005)**; *United States v. Booker*, **260 F.3d 820, 823 (7th Cir. 2001)**. That is, "all crack is cocaine base but not all cocaine base is crack." *Edwards*, **397 F.3d at 571**. For a time, this distinction held much significance in the sentencing context, where the federal Sentencing Guidelines (the "Guidelines") mandate greater punishment for crimes involving "cocaine base" as opposed to other forms of cocaine. **U.S.S.G § 2D1.1(c)**. Prior to 1993, when Congress amended the Guidelines, the Seventh Circuit held that since Congress intended "cocaine base" to mean "crack," in order for a defendant to receive the stricter punishment associated with "cocaine-base" offenses, the fact that a substance was crack (as opposed to any other form of cocaine base) had to be specifically proven. *See United States v. Booker*, **70 F.3d 488, 494 (7th Cir. 1995)**. This confusion is now largely a thing of the past, as "cocaine base" and "crack" are synonymous under the amended Guidelines. **U.S.S.G. § 2D1.1(c)(D)** (""Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine

hydrochoride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.").[2]

While the Seventh Circuit has been clear that "cocaine base" is broader than "crack," however, there remains some uncertainty as to exactly what substances would qualify as non-crack cocaine base. In one case, the Seventh Circuit pronounced an awareness of only two forms of cocaine base — crack and "unprocessed, raw cocaine" — and stated that if "non-naturally occurring chemical additives" are present in a cocaine-base substance, the substance is crack "[b]y the process of elimination." ***United States v. Booker*, 260 F.3d at 823-824**. Elsewhere, however, the court has suggested that coca paste is also a form of cocaine base. ***United States v. Bradley*, 165 F.3d 594, 596 (7th Cir. 1999)**.[3] Adding to this uncertainty is the fact that people are often imprecise when referring to drugs. As the Seventh Circuit has noted, "we do not live in a world in which people use only the most specific term when speaking. A witness using the term "drug" or "dope" or

---

[2] A meaningful distinction between "cocaine base" and "crack" persists, however, in at least one statutory context: **21 U.S.C. § 841(a)(1)**. The Seventh Circuit recently held that in order for that statute's mandatory minimum sentence to apply, the fact that a substance is crack, not merely cocaine base, must be specifically established. ***Edwards*, 397 F.3d at 577**.

[3] Still elsewhere, the court has stated that since cocaine itself is a base, "the phrase "cocaine base," in scientific terms, is redundant." ***United States v. Booker*, 70 F.3d at 490**. The court there went to present a detailed scientific analysis of how, exactly, coca leaves are converted first into coca paste, then into powder cocaine, and finally into "freebase," a form of which, the court stated, is crack cocaine. ***Id.* at 491**. The court did not, however, identify any other forms of freebase besides crack.

"cocaine" in addition to the term "crack" does not mean that the substance about which she is speaking is not crack cocaine." **United States v. Earnest, 185 F.3d 808, 812 (7th Cir. 1999)**. Thus, despite a reference to "cocaine," or "cocaine base," the identity of the underlying substance is not always clear.

### C. Sufficiency of the Government's Evidence

Here, Defendant offers no evidence to suggest that the 5.9-gram substance is a form of non-crack cocaine base.[4] The relevant question, therefore, is whether the government has introduced sufficient evidence for a jury to find that the 5.9-gram substance was crack.

The Court finds in the affirmative. As noted above, Defendant's motion is entirely premised on Hymes's failure to affirmatively identify the 5.9-gram substance in question as crack cocaine. This failure, however, does not imply that the substance was not crack. As the Seventh Circuit has noted, there are various ways for people to refer to the substance commonly known as crack, one of which is "cocaine base." *See* **Earnerst, 185 F.3d 808**; *see also* **U.S.S.G. § 2D1.1(c)(D)** (""Cocaine base," for the purposes of this guideline, means "crack."").[5] Crack, after

---

[4] At trial, Hymes — whose testimony Defendant's motion focuses on — did not suggest that the 5.9-gram substance was a form of cocaine base other than crack. Rather, she indicated simply that the substance was "cocaine base," a category into which crack falls. **Edwards, 397 F.3d at 571**. Defendant presents no other evidence to suggest that the 5.9-gram substance was non-crack cocaine base.

[5] Hymes's answer to the following question at trial is particularly noteworthy in this regard: "Q: And cocaine base is commonly known as crack? A: Yes." (Trial Tr., Day 3, p. 226.)

all, is an common form of cocaine base; Hymes's statement that the 5.9-gram substance was "cocaine base," therefore, is plainly consistent with it being crack. In fact, when coupled with her description of the 5.9-gram substance as "chunky" (Trial Tr., Day 3, p. 228), Hymes's statement leads the Court directly to the inference that the substance was, in fact, crack cocaine. *See* **U.S.S.G. § 2D1.1(c)(D)** (""Crack" . . . usually appears in lump, rocklike form."); ***Earnest*, 185 F.3d at 812** (relying on a description of crack as an "off-white chunky substance"); *see also* ***United States v. Linton*, 235 F.3d 328, 330 (7th Cir. 2000)** (upholding a court's finding that a cocaine-base substance was crack in part based on a description of the substance as a "white-yellow chunky substance"). However, more importantly, when the question was put to the jury, it convicted the Defendant of the indicted charge based on the evidence before it, including that of the scientist. The Court assumes the jury parsed the testimony of the witness and concluded, when all of her testimony was considered, that she was testifying that she weighed 5.9 grams of a substance "commonly known as crack."

On top of this, Defendant's trial was replete with other evidence strongly supporting the jury's finding that the 5.9-gram substance was crack. The government identifies several instances in which such evidence was introduced. First, Lieutenant David Hayes, who worked for seven years in the Alton Police Department's narcotics division and who served as an undercover narcotics officer, testified that based on his narcotics experience, the 5.9-gram substance in question

was crack cocaine. (Trial Tr., Day 3, pp. 81-82.) Second, witness and government informant Tina Whittenburg — an admitted frequent seller and purchaser of crack — testified that she purchased crack from Defendant, and that she initiated the purchase of the 5.9-gram substance in question by calling Defendant "[f]or some crack, a quarter-ounce of crack." (Trial Tr. Day 4, p. 132.) Third, Alton Police Captain Scott Waldrup, an eighteen-year veteran of the police department, testified that on the relevant date, Defendant "had almost 6 grams of crack on him." (Trial Tr., Day 3, p. 172.) Fourth, Alton police officer Tony Bumpers, who testified that he worked for three years as a narcotics officer, repeatedly responded to classifications of the 5.9-gram substance as "suspected crack" or "crack." (Trial Tr., Day 3, pp. 189, 193, 202, 205.) Fifth and finally, witness Robert Nosbisch testified that while Defendant was being processed at the Alton police station he exclaimed "you already got 6 grams of crack that I had and I know I'm going to jail forever." (Trial Tr., Day 2, p. 180.)

These instances, coupled with Hymes's testimony, are more than sufficient to support the jury's finding of guilt on Count I. As the Seventh Circuit has held, "[t]he testimony of witnesses familiar with crack, combined with direct evidence that the substance had the appearance of and was packaged like crack, is sufficient to satisfy the government's burden of proof and permit a district court to conclude that a defendant possessed crack." **Linton, 235 U.S. at 330**. Furthermore, "those who smoke, buy, or sell this stuff are the real experts on what is crack." ***United***

*States v. Bradley*, **165 F.3d 594, 596 (7th Cir. 1999)**. Here, the jury was presented with substantial evidence that the 5.9-gram substance in question was crack, including testimony from knowledgeable, experienced parties. Given Defendant's "nearly insurmountable hurdle" at this stage, the Court declines to overturn the jury's verdict.

### III. Conclusion

For all of the above reasons, the Court **DENIES** Defendant's motion. (Doc. 163.)

**IT IS SO ORDERED**.

Signed this 28th day of December, 2005.

      /s/      David RHerndon
**United States District Judge**